**SIMMONS FORD, INC. and Sebring-Vanguard, Inc., Plaintiffs,**

v.

**CONSUMERS UNION OF the UNITED STATES, INC., Defendant.**

No. K76–454 CA4.

United States District Court, W. D. Michigan, S. D.

March 17, 1980.

Michael C. Gergely, Gergely, Foley & Scott, Vicksburg, Mich., for plaintiffs.

Michael N. Pollet (argued), Karpatkin, Pollet & Lemoult, New York City, F. William McKee, Rhodes, McKee & Boer, Grand Rapids, Mich., for defendant.

### OPINION AND ORDER

BENJAMIN F. GIBSON, District Judge.

This case is a diversity action, sounding in tort, for damages consequent to an adverse product test evaluation in *Consumer Reports*. The plaintiffs brought suit almost a year after the article in question appeared in the October 1975 issue of the magazine. Pursuant to stipulation, the defendant has delayed making answer until the pending motions are decided.

Consumers Union has moved to dismiss the complaint for failure to state a claim upon which relief may be granted, Fed.R. Civ.P. 12(b)(6), and to transfer the action to the Southern District of New York, under 28 U.S.C. § 1404(a). Because the Court finds that the balance of convenience tips decisively in favor of transfer, it grants this portion of the defendant's motion, and does not reach the question of dismissal.

Jurisdictional facts are undisputed. Plaintiff Sebring Vanguard manufactured the critiqued product, a small electric automobile known as the "Citicar." Sebring is a Delaware corporation, and maintains its principal place of business in Florida. Its board of directors may meet occasionally in Maryland. Plaintiff Simmons Ford, a Michigan corporation with headquarters in the District, was a distributor of the Citicar. Consumers Union, ("CU"), the sole defendant, is a New York corporation with its principal place of business in the Southern District of New York, just outside New York City at Mount Vernon. It produces and publishes the widely-circulated journal *Consumer Reports.*

28 U.S.C. § 1404(a) provides in its entirety:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

As a preliminary matter, it is clear that this action "might have been brought" in the Southern District of New York. 28 U.S.C. § 1391(a) & (c). The parties are agreed on the factors to be considered by the Court in evaluating a motion under § 1404(a), as enumerated by Judge Weinfeld in *Schneider v. Sears*, 265 F.Supp. 257, 263 (S.D.N.Y. 1967) (footnotes omitted):

> The court's discretion under section 1404(a) is broader than under the forum non conveniens doctrine, but the criteria applicable under the statute are substantially those developed under the older doctrine. These include: (1) the convenience to parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer.

In short, the Court may look to any consideration which may render trial "easy, expeditious, and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

■ Virtually any case tried anywhere will involve some inconvenience to one or all parties, their witnesses and their attorneys. The Court must consequently balance inconveniences to determine where venue is best laid. The Court exercises broad discretion in reading the scales of a § 1404(a) motion, *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955); however, "unless the balance is strongly in favor of the defendant the plaintiff's choice of forum should rarely be disturbed." *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir. 1951). It is generally recognized that the convenience and availability of counsel is to be given little or no weight in striking this balance. 15 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3850, at 262 (1976).

■ The relative inconvenience to the parties occasioned by trial in Grand Rapids or New York City is a function of the issues they will explore at trial. The Court holds no opinion whether the acts complained of are better characterized as defamation of the plaintiffs' reputations, or disparagement of their product. On the distinction between the two, *see Developments in the Law, Competitive Torts*, 77 Harv.L.Rev. 888, 893 (1964); W. Prosser, Law of Torts §§ 112, at 757–8, & 128 (4th ed. 1971). *Compare Steak Bit of Westbury, Inc. v. Newsday, Inc.*, 70 Misc.2d 437, 334 N.Y.S.2d 325 (Sup.Ct.1972) *and Mains v. Whiting*, 87 Mich. 172, 49 N.W. 559 (1891) *with Drug Research Corp. v. Curtis Publishing Co.*, 7 N.Y.2d 435, 199 N.Y.S.2d 33, 166 N.E.2d 319 (1960) *and Sullivan v. The Thomas Organization, P. C.*, 88 Mich.App. 77, 276 N.W.2d 522 (1979). Regardless of the theory and controlling law under which the case is tried, several of the same elements will be at issue. These include: the truth of the statements in question; whether, if false, the statements were uttered with *at least*

the negligent state of mind required by *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny, *see* Restatement (Second) of Torts §§ 558 & 623A (1977); and whether the statements, if false, actually caused the complained of damages. The plaintiffs must establish the falsity of the offending statement that the Citicar had been exempted from federal motor vehicle safety standards. In all likelihood, they will rely on documentary evidence in their attempt to do so. But to probe the state of mind of the responsible CU officers and employees, the plaintiffs probably will present *vive voce* testimony. Certainly the defendant may be relied upon to call its own agents as part of its defense.

The unchallenged affidavits of CU's Technical Director (Florman) and Assistant Comptroller (Milani) establish that the defendant will be substantially inconvenienced if its employees must testify in Grand Rapids. The technical, production and editorial personnel responsible for the Citicar evaluation all reside in the vicinity of CU's Orange, N. J. and Mount Vernon, N. Y. offices, where the work was conducted. Florman Dep. at ¶ 9; Milani Dep. at ¶ 4. Their absence from home and work while testifying in Grand Rapids will disadvantage not only them and their families, but will work a genuine hardship on their employer as well. Apparently because it is a non-profit organization, CU operates under close financial constraints and employs only a minimally sufficient, almost skeletal, staff. Its engineers, writers and editors perform specialized work "in a year-round operation that proceeds on a very tight schedule." The loss of engineering and editorial personnel thus causes an immediate disruption of CU's operations which cannot be remedied by retaining temporary replacements. Florman Dep. at ¶¶ 11–14. If trial were held in the Southern District of New York at Manhattan, some 80 miles from Orange, CU's people would need travel only a short distance to testify, and could attend to their duties except when required in court. Trial in the Southern District would also obviate the substantial expenses of transporting CU's personnel and documentary evidence from the East Coast to Michigan, and maintaining them in Grand Rapids.

Countervailing inconveniences to the plaintiffs occasioned by the requested transfer are comparatively small. Sebring Vanguard's officers and employees are concentrated in Florida and perhaps Maryland. Travel from these locales to New York City would be at least as convenient, if not more so, than travel to Grand Rapids. (The Court takes judicial notice of the relatively superior air links along the Eastern corridor to New York). To the extent that Sebring Vanguard seeks to prove nationwide damage to its sales, it may wish to call employees and consultants from throughout the United States. Assuming that such potential witnesses are scattered around the country, travel to New York City would present little more inconvenience to them as a group than travel to Grand Rapids.

Simmons Ford is the only party which would be inconvenienced by transfer. All its officers, employees and records are located in the Western District of Michigan at Schoolcraft, and face the much longer trek to New York City. However, Simmons Ford adduces no other instances of inconvenience to it caused by the proposed transfer. Apparently, its operation will not be so seriously disrupted as those of CU; at least it gives the Court no reason to believe so. Nor does it seem that many of its personnel will be required to testify. If falsity is established, then causation, and damages incurred by Simmons' inability to sell its stock of approximately five (5) Citicars, could be established by only a few witnesses. Again, no material is tendered to indicate otherwise.

The Court also finds that the interest of justice would be served by transfer. The comparative docket conditions of the Western District of Michigan and the Southern District of New York render an expeditious hearing more likely in the latter forum. Latest statistics indicate that active judges in the Western District carry a caseload of 591, while those in the Southern District

carry only 312. The median time from filing to disposition in this District is 18 months, but only 10 months in the Southern District. Administrative Office of the United States Courts, Annual Report of the Director, Table C–5, at A28–9 (1979). The likelihood that trial of this case may be had more promptly in the Southern District weighs in favor of transfer. *Fannin v. Jones*, 229 F.2d 368, 369–70 (6th Cir.), *cert. denied*, 351 U.S. 938, 76 S.Ct. 834, 100 L.Ed. 1465 (1956). So too does the ready availability of witnesses from the Highway Traffic Safety Administration in Washington, D. C., to address the applicability of federal automobile safety standards to the Citicar.

Simmons Ford is not without an interest in trial at the forum of its choice. But it may not impose its choice on an opponent which would be much more disadvantaged by trial in that place. The motion of defendant Consumers Union for transfer of this cause to the Southern District of New York is therefore GRANTED.

IT IS SO ORDERED.