The NEFF ATHLETIC LETTERING COMPANY, Plaintiff,

v.

James WALTERS, Defendant.

No. C–3–80–367.

United States District Court, S. D. Ohio, W. D.

Oct. 16, 1981.

James R. Levinson, Coolidge, Wall, Matusoff, Womsley & Lombard Co., L. P. A., Dayton, Ohio, for plaintiff.

Randal E. Breaden, Greenville, Ohio, Susan J. Dlott, Graydon, Head & Ritchey, Cincinnati, Ohio, Bruce T. Wick, Musca & Miralia, Cleveland, Ohio, for defendant.

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR REASON OF THIS COURT'S LACK OF IN PERSONAM JURISDICTION; DECISION AND ENTRY SUSTAINING DEFENDANT'S ALTERNATE MOTION FOR CHANGE OF VENUE; CASE TRANSFERRED TO DISTRICT COURT OF NEW HAMPSHIRE, AT CONCORD; PROCEDURES ORDERED OF CLERK OF COURTS OFFICE; TERMINATION ENTRY

RICE, District Judge.

The captioned cause is before this Court upon defendant's motion to dismiss the complaint for reason that this Court lacks in personam jurisdiction over the defendant or, in the alternative, for a change of venue to the federal district court in New Hampshire. In a decision and entry of June 26, 1981, 517 F.Supp. 1073 (S.D. Ohio 1981), this Court deferred ruling on said motion, since plaintiff had not set forth, by affidavit or deposition, certain facts crucial to the resolution of the jurisdictional question. In that decision, the Court also noted that defendant had not set forth facts warranting a change of venue.

Both plaintiff and defendant have now filed affidavits setting forth facts concerning, respectively, this Court's in personam jurisdiction and the appropriateness of a change of venue. Based on a review of these affidavits and the applicable law, this Court concludes that in personam jurisdiction is not lacking, but that a change of venue is warranted. Accordingly, the captioned cause is ordered transferred to the District of New Hampshire, at Concord.

## I. FACTS

The dispute in this case arose from defendant James Walters' alleged breach of a contract entered into with plaintiff Neff Athletic Lettering Company (Neff). Walters initiated contact with the president of

Neff in 1975. Walters was a resident of Ohio at the time, as was (and still is) Neff. After subsequent discussion between the parties within Ohio, they entered into a written contract in Greenville, Ohio.[1]

Under the contract, Walters was to operate as a sales representative within territories assigned by Neff. Walters solicited orders from customers and forwarded the orders to Neff's Ohio office. Neff products were also shipped from the Ohio office to Walters. Walters was initially assigned to solicit orders from customers in Maryland and Delaware, and was later assigned to New Hampshire and parts of New York and Massachusetts. The contract terminated in January of 1980.

Neff alleges that Walters breached several provisions of the contract between 1975 and 1980. In particular, Neff claims that Walters refused to repay loans Neff made to Walters, disclosed confidential information to competitors of Neff, sold merchandise on behalf of persons other than Neff, diverted customers to himself, and worked in a competitive business in the assigned territory. Although Neff does not so state, most, if not all, of these alleged acts took place outside of Ohio. In 1980, Neff filed suit in Darke County, Ohio, Common Pleas Court. Walters subsequently removed the case to this Court as a diversity action, and now seeks dismissal of the complaint or, in the alternative, a change of venue.

## II. APPLICABLE LAW

■ Within this Circuit, a motion for change of venue pursuant to 28 U.S.C. § 1404(a) can only be commenced in a district court where both personal jurisdiction and venue are proper. *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980). Therefore, these factors must be addressed as a prerequisite to a discussion of the change of venue.

---

1. In his answer to the complaint, Walters admits that a contractual relationship existed but denies the validity of the written contract. However, Walters does not deny that contacts took place in Ohio in 1975 and does not contest the existence of other jurisdictional facts. He does, of course, contest the *significance* of those facts.

## A. PERSONAL JURISDICTION AND VENUE

The appropriateness of this Court's in personam jurisdiction over defendant was discussed at length in the June 26, 1971, decision. As noted above, the Court was of the opinion that if plaintiff alleged certain facts, by affidavit or deposition, jurisdiction over defendant would be proper. Neff has now filed an affidavit setting forth these facts (doc. # 21), and the Court confirms its earlier tentative conclusion and finds in personam jurisdiction in this case. The defendant's motion to dismiss due to this Court's alleged lack of in personam jurisdiction is overruled.

■ This Court summarized the applicable law in the earlier decision, and it may be briefly restated here. A federal court in a diversity suit must, of course, apply the "long-arm" jurisdictional statute of the forum state. *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981). The relevant Ohio statute states that personal jurisdiction may be had over a cause of action arising from a defendant having transacted "any business in this state." O.R.C. § 2307.382(A)(1). This language has been interpreted as extending jurisdiction to the constitutional limits of due process. *Welsh v. Gibbs, supra*, at 439; *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 225 (6th Cir. 1972). This Circuit utilizes a three-part test to determine whether personal jurisdiction may be had in conformity with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Welsh v. Gibbs, supra*, at 440 (quoting *Southern Machine Company, Inc. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

■ In personam jurisdiction over the defendant is justified under these criteria. The events leading up to and including the execution of the contract took place in Ohio, and defendant took the initiative in contacting plaintiff in Ohio. Moreover, throughout the term of the contract, defendant returned to the Neff headquarters in Greenville, Ohio, on a periodic basis for company meetings. Finally, defendant forwarded all orders to and received shipments from Ohio. These facts certainly establish defendant's "minimum contacts" with Ohio under the long-arm statute such that it is fair that he defend a suit brought in Ohio, and that the assertion of in personam jurisdiction will not offend traditional notions of fair play and substantial justice.

■ In addition, venue of the action is proper in this Court. In a diversity action, venue is proper "where all plaintiffs *or* all defendants reside *or* in which the claim arose." 28 U.S.C. § 1391(a) (emphasis added). In the instant case, plaintiff is a resident of Greenville, Ohio, which is within the Southern District of Ohio.

## B. CHANGE OF VENUE

■ In the alternative, defendant seeks a change of venue of this action pursuant to 28 U.S.C. § 1404(a), which provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Under this section, a threshold consideration is whether the action "might have been brought" in the proposed transferee district court. *Continental Grain Co. v. F.B.L.–585*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960). An action "might have been brought" in a proposed transferee court if (1) the court has jurisdiction over the subject matter of the action, (2) venue is proper there, and (3) the defendant is amenable to process issuing out of the transferee court. 1 Moore's *Federal Practice*, ¶ 0.145[6.–1] at 1636 (1980). These criteria

are satisfied in this case. The district court in New Hampshire would have jurisdiction of a diversity action (since the parties are citizens of different states, 28 U.S.C. § 1332(a)(1), the defendant being currently a resident of New Hampshire), venue would be proper since defendant lives within that district, 28 U.S.C. § 1391(a), and defendant acknowledges that he would be subject to process in that district.

This Court must now determine whether a transfer is justified under the balance of the language of § 1404(a), that is, for "the convenience of parties and witnesses" and "in the interest of justice." The power of a court to transfer pursuant to § 1404(a) has its roots in the doctrine of *forum non conveniens*. In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court outlined the factors to be evaluated in determining whether *forum non conveniens* should apply in a particular case:

> An interest to be considered and the one most likely to be most pressed, is the private interest of the litigant. Important considerations are the relative case of access to proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Id.* at 508, 67 S.Ct. at 843.

In addition, the *Gilbert* court stated that "factors of public interest" were applicable, including congested court dockets and the appropriateness of having trial of a diversity case in the forum at home with the law which will govern the case. *Id.* at 508–09, 67 S.Ct. at 843.

■ The grant of power to transfer under § 1404(a) did *not* effect a codification of the doctrine of *forum non conveniens*. While the same factors relevant to *forum non conveniens* should be considered a *lesser* showing of inconvenience need be shown to justify transfer pursuant to § 1404(a). *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75

S.Ct. 544, 546, 99 L.Ed. 789 (1955); *Mead Corp. v. Oscar J. Boldt Const. Co.*, 508 F.Supp. 193, 197 (S.D. Ohio 1981) (*Mead Corp.*).

This Court has carefully examined the *Gilbert* factors, the applicable precedent, and the memoranda and affidavits of the parties to this case. Acknowledging that the question is a relatively close one, the Court finds that the facts in this case justify a change of venue to the district court in New Hampshire. In reaching this conclusion, the Court has examined all the criteria relevant to a change of venue motion. These criteria are set out and discussed below:

1. *Plaintiff's choice of forum*: In addition to the factors set out above, the *Gilbert* court also stated that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." 330 U.S. at 508, 67 S.Ct. at 843. Following this language, some courts, in ruling upon § 1404(a) motions, have assigned a paramount importance to this factor. *See, e. g., Bodine's, Inc. v. Sunny-O, Inc.*, 494 F.Supp. 1279, 1285 (N.D.Ill.1980). Other courts have suggested that this factor is simply one to be considered and weighed equally with other relevant criteria. *See Mead Corp., supra*, at 198; *Artisan Development v. Mountain States Development Corp.*, 402 F.Supp. 1312, 1316 (S.D. Ohio 1975).

■ This Court believes the latter view to be the correct one. In this case, plaintiff has filed suit in Ohio and is a resident of the Southern District of Ohio. Nevertheless, all the factors weighed together compel a change of venue. Even assuming that plaintiff's forum choice deserves a higher weight than other factors, two circumstances lessen the significance of plaintiff's choice. First, courts have suggested that:

> A large measure of deference is due to the plaintiff's freedom to select his own forum. Yet this factor has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff.

*Mead Corp., supra*, at 198 (citing *Chicago Rock Island and Pacific Railroad Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir.), *cert. denied*, 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735 (1955)). In the present case, virtually all the alleged breaches of contract occurred outside of Ohio. Second, plaintiff technically did not choose this forum, since the suit was originally filed in state court and removed by the defendant to federal court. Thus, this factor, while weighing in plaintiff's favor, does not assume paramount importance.[2]

■ *2. Applicable law:* Under paragraph 22 of the written contract, the "terms and conditions" of the contract are to be "construed and enforced in accordance with the laws of the State of Ohio." Unless the forum selected by such choice of law clauses "has no substantial relationship to the transaction," such clauses are typically enforced. 16 O.Jur.3d, *Conflict of Laws*, § 11 (1979). The clause would be enforceable in the present case and the required application of Ohio law thus weighs in plaintiff's favor.[3]

3. *Compulsory process for unwilling witnesses:* By affidavit (doc. # 24), defendant states that he would call fifteen witnesses if this case went to trial. Nine of these persons live in New Hampshire, five in Massachusetts, and one in New York. Most of defendant's proposed witnesses are within 100 miles of the District Court in New Hampshire and thus are amenable to subpoena for a hearing or trial in New Hampshire pursuant to Fed.R.Civ.P. 45(e)(1). None of these witnesses would be subject to compulsory process in Ohio. In contrast, plaintiff has not submitted a list of witnesses. As will be discussed more fully below, plaintiff probably would call some of its own employees as witnesses to confirm the validity of the contract. While they would be outside the 100 mile radius of the New Hampshire court, it can be assumed that they would be obedient to a command of their employer to testify. *Mead Corp., supra*, at 199. This factor thus weighs in defendant's favor.

4. *Cost of obtaining willing witnesses:* Defendant claims that transporting the aforementioned witnesses to Dayton, or arranging to take their depositions, would be a tremendous financial burden on him.

---

**2.** In *Sun Oil v. Lederle*, 199 F.2d 423, 424 (6th Cir. 1952), the Sixth Circuit relied on *Gilbert's* "plaintiff's choice" language in ruling upon a motion to transfer. One court in the Sixth Circuit, in ruling upon a § 1404(a) motion, cited *Sun Oil* for the proposition that "plaintiff's choice of forum should rarely be disturbed." *Simmons Ford, Inc. v. Consumers Union of the United States, Inc.*, 490 F.Supp. 106, 107 (W.D. Mich.1980). However, the brief opinion in *Sun Oil* involved *forum non conveniens*, not § 1404(a), and should not be controlling in a § 1404(a) suit. *See Mead Corp., supra*, at 198. *See also* 1 Moore's *Federal Practice*, ¶ 0.145[5] at 1617–18 (1980) ("... plaintiff's choice may be disregarded under § 1404(a) for less impelling reasons than under the former doctrine of *forum non conveniens* ....").

**3.** The Court is, however, attentive to defendant's claim, note 1 *supra*, that the written contract is not valid. Arguably, the law of a state other than that of Ohio may govern, in whole or in part, the validity of said contract and, in turn, the validity of the choice-of-law clause. A federal court in a diversity action must, of course, apply the conflict-of-law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In the first instance this Court would be required to examine Ohio caselaw on conflict-of-laws to determine if the law of another state applied. On the latter point, it is not clear, under Ohio law, if the law of another state would govern the validity of said contract. *Cf. S & S Chopper Serv., Inc. v. Scripter*, 59 Ohio App.2d 311, 394 N.E.2d 1011 (1977) (Ohio applies law of place of making contract *or* place of performing contract) and *McCluskey v. Rob San Services, Inc.*, 443 F.Supp. 65 (S.D.Ohio 1977) (same) *with Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409 (N.D.Ohio 1976) (Ohio applies law of place where contract was made). If this action were transferred to the federal court in New Hampshire, that court would be required to apply the law of the transferor court, i. e., Ohio conflict-of-law rules. *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Ohio law will govern the choice of law in this action, but that choice of *substantive* law may draw on the law of another state. Hence, it is not absolutely certain that Ohio law will govern all aspects of this action. This uncertainty lessens to some extent the strength of the factor of applicable law, which factor, as noted in the text, operates in plaintiff's favor if the written contract is valid.

(Defendant states that he earns $17,000 a year, doc. # 14). Neff, on the other hand, as a corporation doing business in several states is presumably in a better financial position than defendant to contest this action in New Hampshire than in Dayton. Several courts have taken such financial matters into account when determining the cost of obtaining witnesses. *See, e. g., Garrett v. Ruth Originals Corp.*, 456 F.Supp. 376, 384 (S.D.Ohio 1978).

More importantly, it appears that most of the witnesses which are likely to be called by the parties in this action reside in the territories assigned to defendant, that is, the eastern United States. Indeed, most of the witnesses crucial to this case appear to be those specified by defendant. As noted above, unlike plaintiff, defendant has specified the witnesses he intends to call and the significance of those witnesses. *Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 160–61 (3d Cir. 1980), *cert. granted on other grounds*, 450 U.S. 909, 101 S.Ct. 1346, 67 L.Ed.2d 333 (1981); *James v. Norfolk & Western Ry. Co.*, 430 F.Supp. 1317, 1319 (S.D.Ohio 1976). Plaintiff's six causes of action seem to arise from defendant's acts or omissions to act in the territories assigned to him. While plaintiff earlier claimed that it anticipated calling witnesses from the eastern United States, "but mostly from Ohio," (doc. # 10), it is now clear that "most" of plaintiff's witnesses would come from the territories assigned to the defendant, which are outside of Ohio. In the Pretrial Order filed in this action (doc. # 9), plaintiff admitted that it would conduct discovery of defendant's customers, and such discovery of witnesses in defendant's geographic region is presumably anticipated or ongoing.

In short, most of the potential witnesses reside in the eastern United States. Many would be amenable to process in the New Hampshire court, and it would be more convenient for the balance of them to attend a trial in New Hampshire rather than in Dayton. The convenience of the witnesses thus weighs in defendant's favor.

5. *Relative ease of access to proof/practical problems*: Plaintiff has sought defendant's business records in discovery which, defendant says, can only be transported to Ohio for examination at great inconvenience and expense (doc. # 7–8). These records cover a five year period, fill several filing cabinets, and defendant in his current work requires continual access to them. He also asserts that he should not bear the expense of copying the records and shipping them to Ohio. In addition, he has agreed to make these files available for plaintiff's inspection at the New Hampshire office (doc. # 8). Thus, the practical problems associated with the movement of the business records—records which both parties acknowledge are of importance to this action—coupled with the availability of the records in New Hampshire weighs in defendant's favor.

6. *Docket congestion*: An examination of the respective caseloads of the transferor and transferee courts is an appropriate inquiry in a change of venue motion. *Simmons Ford, Inc. v. Consumers Union of the United States, Inc.*, 490 F.Supp. 106, 108–09 (W.D.Mich.1980); *Artisan Development v. Mountain States Development Corp., supra*, at 1317; 1 Moore's *Federal Practice*, 0.145[5] at 1627 (1980). For the period ending June 30, 1980, there were 572 pending civil cases for the two District Judges in New Hampshire while there were 2869 pending civil cases for the six District Judges in the Southern District of Ohio. Administrative Office of the United States Court, Annual Report of the Director, Table 14 at pp. 56–57 (1980). The comparative caseloads render an expeditious hearing of this action more likely in New Hampshire. Thus, this factor weighs in favor of the defendant.

In conclusion, granting defendant's motion for a change of venue would result in more than simply "shifting the inconvenience" from one party to another. *Mead Corp., supra*, at 199. The Court has carefully examined all the factors in this action relevant to a § 1404(a) motion and finds that these factors, when considered together, warrant a transfer to the District of New Hampshire, at Concord, for the conve-

nience of the parties and witnesses and in the interest of justice.

Accordingly, this Court overrules the defendant's motion to dismiss the complaint for lack of in personam jurisdiction but grants defendant's alternate motion to transfer the case to the District of New Hampshire, at Concord. The captioned cause is ordered transferred to the District of New Hampshire, at Concord.

The Office of the Clerk of the United States District Court for the Southern District of Ohio, Western Division, at Dayton, is ordered to take all necessary procedures to effect the transfer of this case to the District of New Hampshire, at Concord.

The captioned cause is ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.